IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEATHER SOLOMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | Civil Action No. 2:21-1750 |
| ) | |
| ) | Magistrate Judge Dodge |
| ANTHONY PARENTE and WILLIAM ) | |
| SOLOMON, II, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Heather Solomon brings this action against two defendants: her estranged husband, William Solomon, II ("Solomon"), for acts of domestic abuse he allegedly inflicted upon her for almost two years; and Anthony Parente ("Parente"), a law enforcement officer employed by the Pennsylvania State Police (PSP), for allegedly failing to respond to her repeated requests for help when Solomon disregarded a protection from abuse order ("PFA") and for refusing to file charges against Solomon for his acts of abuse and harassment.

Currently pending before the Court is Solomon's motion to dismiss. He argues that Plaintiff has provided no basis for asserting subject matter jurisdiction over the state law claims asserted against him (intentional infliction of emotional distress, trespass and assault and battery). He contends that these claims are unrelated to the civil rights claim asserted against Parente (denial of equal protection of the laws) that provides the basis for federal subject matter jurisdiction. He further asserts that the state law claims fail to state a claim upon which relief could be granted. For the reasons that follow, Solomon's motion will be granted.[1]

---

[1] Because the Court is dismissing the claim based upon the lack of subject matter jurisdiction argument, it is unnecessary to reach Solomon's alternative argument that Plaintiff's claims

I. **Procedural History**

Plaintiff commenced this action on December 1, 2021. Federal question jurisdiction is based on the § 1983 civil rights claim in Count I, 28 U.S.C. §§ 1331, 1343(3), in which she alleges that Parente denied her the equal protection of the laws based on her gender when he refused to act on her complaints of abuse by Solomon.

Plaintiff contends that supplemental jurisdiction, 28 U.S.C. § 1367, may be exercised in connection with Counts II through IV, which are asserted only against Solomon. These claims include intentional infliction of emotional distress (Count II), trespass (Count III) and assault and battery (Count IV).

Parente has filed an Answer (ECF No. 8) to the Complaint. Solomon's subsequently filed motion to dismiss (ECF No. 17), has been fully briefed (ECF Nos. 18, 26).

II. **Relevant Factual Background**

Plaintiff alleges that, on or about July 27, 2020, Judge Linda Cordaro of the Fayette County Court of Common Pleas granted a final PFA that directed Solomon not to "abuse, harass, stalk, threaten, or attempt or threaten to use physical force against [her]" and that he "shall not contact [her] … by telephone or any other means, including third persons." The PFA granted Plaintiff temporary exclusive custody of their infant son.

Plaintiff indicates that Solomon has repeatedly violated the terms of the PFA, including by emailing, texting and stalking her. On August 9, 2020, he arrived at her residence with a firearm, acted aggressively and violently toward her and then locked himself and their infant child in a bedroom with the firearm. She feared for the life of her child and demanded that he open the door. Solomon exited the room and attacked her, causing her to fear for her life, and

---

against him fail to state a claim upon which relief may be granted.

then ran from the home. She recorded a video on her cell phone of this incident and reported it to the Brownville Police Department, but the officers concluded that the video evidence was insufficient to charge Solomon with any crimes. (Compl. ¶¶ 10-19) (ECF No. 1.)

In November 2020, Plaintiff received harassing emails from Solomon which she reported to the Belle Vernon barracks of the PSP. Trooper Casini criminally charged Solomon for violating the PFA. On or about December 1, 2020, Solomon sent more threatening emails to Plaintiff. Plaintiff was emotionally distressed and feared for her safety and that of her children. She reported the emails to the Belle Vernon PSP and arrived at the barracks shortly thereafter. She reported the threatening email messages and photographs sent by Solomon to Parente and informed him that she had an active PFA against Solomon and feared for her safety and the safety of her children. (*Id.* ¶¶ 20-29.)

In response to the Plaintiff's concerns, Parente told her: "you have to understand why we don't take these situations seriously. Women get PFAs and abuse their power with them and purposefully use a PFA violation as a tactic to get back at an ex. So, we don't normally take these seriously." Plaintiff was shocked and horrified by what she viewed as Parente's discriminatory statement. She informed Parente that there were numerous reports, documentation and video evidence which clearly showed that she has been abused by Solomon. Parente refused to review this information and told Plaintiff that he did not handle "civil cases," despite evidence that Solomon had engaged in criminal activity and had violated the PFA. (*Id.* ¶¶ 30-34.)

Plaintiff alleges that Parente eventually, and falsely, told her that he would file criminal charges against Solomon for violating the PFA, but never did so. Plaintiff asserts that Parente did not file criminal charges against Solomon because he discriminated against her and treated her differently on the basis of her gender. (*Id.* ¶¶ 35-38.)

On or about December 20, 2020, Plaintiff received more harassing and threatening email messages from Solomon. She reported these messages to the Brownsville Police Department and Solomon was criminally charged by a Brownsville Police officer for violating the PFA. She received more threatening emails from Solomon in January 2021. She immediately called 9-1-1 and was told that a Belle Vernon PSP trooper would contact her. (*Id.* ¶¶ 39-42.)

Three hours later, Parente contacted Plaintiff and instructed her to bring her "laptop" to the station to be searched. Plaintiff did not own a laptop, however, and had viewed the email messages from Solomon on her cell phone. She offered to bring her phone and Solomon's computer—which had not been used since Solomon had been evicted from her residence—to the barracks. After she arrived at the barracks, Parente informed her that Solomon had given a statement that he was with a friend and did not have cell phone reception at the time that the email messages were sent. Parente did not verify Solomon's statement. When Plaintiff questioned why Parente had not criminally charged Solomon in connection with the email messages, Parente falsely responded that the District Attorney required a full report of the Plaintiff's phone and that his "hands were tied." (*Id.* ¶¶ 43-49.) Further, Parente falsely accused her of sending the email messages to herself and threatened to file criminal charges against her if he found any evidence of this conduct. Parente did not file any charges against Solomon for violating the PFA. (*Id.* ¶¶ 50-57.)

Due to Parente's failure to take any action, Plaintiff contacted a computer engineering company in Pittsburgh to investigate the threatening emails received on her phone. It found that the threatening emails originated from an IP address registered to a device affiliated with Solomon. Thereafter, Plaintiff met with the Fayette County District Attorney, who informed her that his office did not require any report of the Plaintiff's cell phone as Parente had claimed.

4

Sometime in February of 2021, the Brownsville Police Department executed a warrant to obtain the contents of Solomon's phone. Solomon refused to provide a passcode to the officers for nearly seven months, however. (*Id.* ¶¶ 58-61.)

After months of inaction by Parente and harassment and stalking by Solomon, Plaintiff was forced to move another county. She contends that as a direct and proximate result of Parente's discriminatory conduct, Solomon continued to stalk and harass her. After she received additional threatening emails from Solomon on or about April 21, 2021, he was charged by the Charleroi Police Department. Plaintiff later met with Fayette County Detective John Marshall, who indicated that he would file charges against Solomon. (*Id.* ¶¶ 62-66.)

### III.  Discussion

#### A. Standard of Review

Dismissal for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). "The party invoking federal jurisdiction bears the burden of establishing" that jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Thus, Plaintiff has the burden of establishing that jurisdiction exists in this case.

The first issue a court must decide in reviewing a Rule 12(b)(1) motion is whether the challenge to the court's subject matter jurisdiction is a facial or factual attack. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff. In reviewing a factual attack, the court may consider evidence outside the pleadings." *Gould Elec., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (footnote and citations omitted). "Facial attacks ... contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." *Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293, 300 n.4 (3d Cir. 2002) (citation omitted).

The parties agree that Solomon's challenge to the Court's subject matter jurisdiction over Counts II through IV is a facial attack.

B. Supplemental Jurisdiction

Because both Plaintiff and Solomon are Pennsylvania citizens (Compl. ¶¶ 5, 7), the Court does not have original subject matter jurisdiction over the state law claims between these non-diverse parties. Thus, the only basis for retaining the claims against Solomon in this case would be supplemental jurisdiction.

The supplemental jurisdiction statute provides that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). "The last sentence of § 1367(a) makes it clear that the grant of supplemental jurisdiction extends to claims involving joinder or intervention of additional parties." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005).

The Supreme Court:

> has long adhered to principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that "derive from a common nucleus of operative fact," such that "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *see Hurn v. Oursler*, 289 U.S. 238 (1933); *Siler v. Louisville & Nashville R. Co.*, 213 U.S. 175 (1909).

*City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164-65 (1997). The Court noted that Congress codified these principles when it enacted § 1367. *Id.*

The Court of Appeals has held that three requirements must be satisfied before

6

supplemental jurisdiction can be exercised:

> "The federal claim must have substance sufficient to confer subject matter jurisdiction on the court." The state and federal claims must derive from a common nucleus of operative facts, and the claims must be such that they would ordinarily be expected to be tried in one judicial proceeding.

*MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995) (quoting *Gibbs*, 383 U.S. at 725). Here, Solomon contends that the second and third requirements are not satisfied because the state and federal claims do not derive from a common nucleus of operative facts and ordinarily would not be expected to be tried in one judicial proceeding.

In *Lyon v. Whisman*, 45 F.3d 758 (3d Cir. 1995), the Court of Appeals addressed whether an employee who asserted a claim under the federal Fair Labor Standards Act for unpaid overtime could also pursue in the same lawsuit state law claims for breach of contract relating to an unpaid or underpaid bonus. The Third Circuit found that was no "common nucleus of operative fact" and the only connection between the claims was the existence of the employment relationship between the parties, which it found to be insufficient. *Id.* at 762. *See also Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 105 (3d Cir. 1988) ("mere tangential overlap of facts is insufficient" to establish supplemental jurisdiction).

Here, Plaintiff's claims against Solomon are based on acts of domestic abuse he allegedly inflicted upon her for almost two years. By contrast, her claims against Parente are grounded in her claim that she was denied equal protection based on her gender when he refused to act on her complaints of abuse by Solomon. Although some explanation of Solomon's actions is necessary context for Parente's alleged conduct, they are ultimately not relevant to the resolution of the claim against Parente or dispositive of his potential liability. Indeed, even if the trier of fact concluded that Solomon is not liable for the tortious conduct alleged by Plaintiff, this would not

7

resolve the issue of whether Parente denied her right to equal protection of the laws on the basis of her gender by failing to act on her complaints and other allegedly discriminatory conduct. Similarly, Solomon's potential liability is not dependent in any way on the conduct of Parente.

Moreover, Plaintiff has not alleged that Solomon and Parente acted in concert to inflict harm on her or to violate her civil rights. Solomon and Parente both are alleged to have engaged in independent wrongful conduct directed towards Plaintiff. Notably, Plaintiff has not cited to any similar cases in which a court found that state law tort claims had a common nucleus of operative fact with a federal civil rights claim alleged against a separate individual for different actions or omissions.[2] The Court's own research revealed persuasive decisions which concluded otherwise. *See Didzerekis v. Stewart*, 41 F. Supp. 2d 840, 850 (N.D. Ill. 1999) (when estate and children of murder victim brought equal protection claim against city and police officers and state law claims against the murderer, the court held that their state law claims against the murderer "involve a different set of facts, actions and theory of law than their § 1983 claim against the City and Officers."); *Novak v. Harper*, 2014 WL 4656246, at *4 (E.D. Va. Sept. 17, 2014) (when woman who was sexually assaulted by a guard at the jail also sued a mental health worker who accused her of lying about the incident, the court held that this claim did not derive from a common nucleus of operative fact with the federal claims). *See also Hutchinson on Behalf of Baker v. Spink*, 126 F.3d 895, 902 (7th Cir. 1997) (civil rights claims brought by mother against social services officials for negligent placement and supervision of child in foster home after child killed in accident did not support supplemental jurisdiction over products liability

---

[2] In *Lyon*, the court noted that one area in which federal courts commonly exercise supplemental jurisdiction consists of "state assault claims in civil rights suits charging police abuses." 45 F.3d at 761 (footnote omitted). In those cases, however, the same actors, that is, police officers who are state officials, were alleged to have committed both the assault and the deprivation of civil rights.

8

claims against manufacturer of equipment involved in the accident); *Allentown Women's Ctr., Inc. v. Dunkle*, 2019 WL 2462685, at *3 (E.D. Pa. June 10, 2019) (concluding that supplemental jurisdiction did not exist over state law claims against anti-abortion protestor for trespass, private nuisance, public nuisance, and conspiracy, claims which were "complete independent of any federal law violations" of two other activists).

In short, Plaintiff's federal law claim against Parente requires her to demonstrate that, while acting under color of state law, Parente denied her equal protection based on her gender because of his alleged failure to investigate and take any appropriate action against Solomon. The facts associated with this claim are markedly different than the facts associated with the alleged conduct of Solomon, which includes claims of intentional infliction of emotional distress, trespass and assault and battery. Thus, the actions of Solomon and Parente do not derive from a common nucleus of operative fact. Moreover, Plaintiff would not "ordinarily be expected to try [these claims] all in one judicial proceeding." *Gibbs*, 383 U.S. at 725. Therefore, supplemental jurisdiction cannot be exercised over the state law claims against Solomon.[3]

For these reasons, the motion to dismiss filed by Solomon will be granted.

An appropriate order will be entered.

Dated: July 26, 2022                              s/ Patricia L Dodge
                                                  Patricia L. Dodge
                                                  United States Magistrate Judge

---

[3] Solomon further argues that, even if the claims against him could be said to share a common nucleus of operative fact with the federal claim against Parente, the Court should decline to exercise supplemental jurisdiction because the claims against him "substantially predominate" over the federal law claim. 28 U.S.C. § 1367(c)(2). The Court need not reach this issue.